NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| **BRENDA WILLIAMS** | : | |
| **Plaintiff,** | : | |
| | : | **Civil Action No. 12-319 (CCC)** |
| **v.** | : | |
| | : | **OPINION** |
| **COMMISSIONER OF SOCIAL SECURITY** | : | |
| | : | |
| **Defendant.** | : | |

**CECCHI, District Judge.**

## I.      INTRODUCTION

Brenda Williams ("Plaintiff") appeals the final determination of the Commissioner of the Social Security Administration ("Commissioner" or "Defendant") denying Plaintiff disability benefits under the Social Security Act. This Court has jurisdiction to hear this matter pursuant to 42 U.S.C. § 405(g). Submissions made in support of and in opposition to the instant motion have been considered by the Court.[1] The Court decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, the decision of Administrative Law Judge Joel H. Friedman (the "ALJ") is affirmed.

## II.      PROCEDURAL HISTORY

### A.  Procedural Background

---

[1] The Court considers any arguments not presented by the parties to be waived. See Brenner v. Local 514, United Bhd. Of Carpenters & Joiners, 927 F.2d 1283, 1298 (3d CiTr. 1991) ("It is well established that failure to raise an issue in the district court constitutes a waiver of the argument.").

Plaintiff initially applied for Supplemental Security Income Benefits ("SSIB") from the Social Security Administration ("SSA") on August 2, 2005, alleging disability beginning on April 1, 2005. (Tr. 32.) Plaintiff's claim was denied by the SSA initially on January 13, 2006 and again, upon request for reconsideration, on August 1, 2006. (Tr. 41, 47.) Plaintiff then filed a request for a hearing before an ALJ, which was held on January 15, 2008. (Tr. 32.) In a written opinion dated October 31, 2008, the ALJ determined that Plaintiff was not disabled within the meaning of the Act and that Plaintiff's impairments did not prevent her from returning to her past work. (Tr. 40.)

After the ALJ's denial of Plaintiff's claim, the Appeals Council granted Plaintiff's request for review, vacating the ALJ's decision of October 31, 2008, and remanding the case for further proceedings. (Tr. 77.) On remand from the Appeals Council, Plaintiff testified before the ALJ on June 4, 2010. (Tr. 13.) In a decision dated November 16, 2010, the ALJ found that Plaintiff became disabled as of January 1, 2010 but was not disabled prior to that date. (Id.) Plaintiff sought Appeals Council review of the ALJ's partially favorable decision, which was denied, finding a lack of grounds for review. (Pl.'s Br. 1.) This action was thereafter commenced.

### B. Personal and Employment Background

Plaintiff is a fifty-eight year old single female with two grown sons, a boyfriend, and siblings with whom she is in regular contact. (Tr. 18, 19.) Plaintiff has a GED and took business classes at Middlesex County College. (Tr. 394.) Plaintiff has not worked in several years (Tr. 21) and has "a sporadic work history with extended periods of unemployment" (Tr. 337). Plaintiff's most recent relevant work was as a cashier for Home Depot. (Tr. 457.)

### C. Medical Background

1. *Medical Evidence Prior to January 1, 2010, the Date the ALJ Found Plaintiff Disabled*

On January 4, 2005, Plaintiff visited Plainfield Health Center (PHC) for a routine visit. (Tr. 165.) PHC had been Plaintiff's primary care provider prior to and through her application for SSI benefits. (Tr. 154-83, 220, 231-33.) According to the PHC examiner, Plaintiff had a past medical history of hypertension, valvular heart disease, endocarditis, chronic obstructive pulmonary disease, smoking and substance abuse managed with Methadone. (Tr. 165.) On examination, Plaintiff had dirty conjunctiva and a holosystolic heart murmur, but overall did not reveal anything remarkable. (Tr. 165.) Plaintiff's medications included Norvasc, Dyazide, Albuterol inhaler, Vasotec, Naprosyn, and Metrogel. (Tr. 165.) Noting that diet and exercise failed, the examiner prescribed Glyburide for Plaintiff's diabetes mellitus and recommended continued cardiology follow-up for Plaintiff's valvular heart disease. (Tr. 165.)

On January 24, 2005, after complaining of chest pain occurring with minimal exertion, Plaintiff was evaluated by cardiologist, Dr. Saleem Husain. (Tr. 216.) The physical examination revealed a fourth heart sound.[2] (Tr. 216.) Plaintiff's lungs were clear to auscultation, and there was no evidence of peripheral edema of the extremities. (Tr. 216.) A stress test the previous year showed no evidence of ischemia. (Tr. 216.) Dr. Husain noted that Plaintiff continued to smoke. (Tr. 216.) Noting ongoing symptoms of "exertionally related" chest pain symptoms with multiple risk factors, Dr. Husain recommended a cardiac catheterization. (Tr. 216.) The February 9, 2005 follow up on the catheterization showed normal coronary arteries, an atrial arteriovenous fistula, and preserved left ventricle systolic function. (Tr. 213.) Dr. Husain's functional assessment indicated that Plaintiff had no limitations of physical activities, including no limitations in lifting, carrying, standing, walking, pushing or pulling, and no postural or

_____

[2] S4, or the fourth heart sound, is usually associated with cardiac disease. *See* Dorland's Illustrated Medical Dictionary 750, 1648 (30th ed. 2003).

manipulative limitations.  (Tr. 214.)

On February 17, 2005, Plaintiff, complaining of painful foot corns, saw podiatrist Dr. Ujjwal K. Datta.  (Tr. 161, 162.)  Dr. Datta diagnosed diabetes mellitus with no complications, acquired keratomas, and onychomycosis.  (Tr. 161.)  Dr. Datta debrided Plaintiff's keratomas and educated Plaintiff about diabetes.  (Tr. 161.)

On May 19, 2005, Plaintiff returned to PHC complaining of increased weakness.  (Tr. 159.)  The examiner listed diagnosis of hypertension, hepatitis C, and COPD.  (Tr. 159.)  The examiner noted that the weakness was of questionable etiology, possibly secondary to Methadone, and ordered laboratory tests.  (Tr. 159; see Tr. 277-78.)  On June 8, 2005, Plaintiff returned to PHC to review test results, at which time the examiner ordered a hepatitis C workup.  (Tr. 157.)  When Plaintiff returned to the PHC on August 2, 2005, the hepatitis C workup was not present, but the examiner observed that her liver function tests were normal.  (Tr. 155; see Tr. 271-73.)

On July 26, 2005, Plaintiff returned to PHC complaining of low back and right leg pain.  (Tr. 156.)  It was noted that Plaintiff previously had similar complaints and that osteoporosis was ruled out.  (Tr. 156; see Tr. 279-82.)  Plaintiff was prescribed Advil for her back pain and the examiner ordered a magnetic resonance imaging (MRI) study of the lumbar spine.  (Tr. 156.)  On August 23, 2005, Plaintiff returned to PHC for the results of the MRI test, which showed that the Plaintiff had an L4-L5 disc bulge with stenosis.  (Tr. 154; see Tr. 275-76.)  The examiner recommended medical management, physical therapy, and Naproxen, for Plaintiff's back pain.  (Tr. 154.)  It was also noted that Plaintiff's hypertension was well controlled.  (Tr. 154.)  On August 2, 2005, the date she filed her SSI application, Plaintiff returned to PHC due to a transient ischemic attack over the weekend, but was stable during the visit.  (Tr. 155.)

On September 9, 2005, Plaintiff saw Dr. Husain with the only symptom being a shortness of breath with exertion. (Tr. 211.) Although Dr. Husain initially saw Plaintiff on January 24, 2005, for complaints of chest pain, Plaintiff currently only had dyspnea on exertion, but no chest pain and clear lungs. (Tr. 212.) Plaintiff's diagnoses included shortness of breath, hypertension, coronary artery disease, and non-insulin dependent diabetes mellitus. (Tr. 211.) Dr. Husain indicated that Plaintiff's August 18, 2004 stress test was negative with mild pulmonary hypertension and mild tricuspid regurgitation, but normal left ventricular function. (Tr. 213.)

On December 21, 2005, Plaintiff reported to PHC that she stopped taking her blood pressure medication because of side effects, and the examiner observed that Plaintiff had blood pressure elevated due to noncompliance. (Tr. 232.)

On December 28, 2005, at the request of the Commissioner, internist Dr. Justin Fernando examined Plaintiff, who had complained of asthma, shortness of breath, heart valve disease, high blood pressure, lower back pain radiating to the right leg, and headaches. (Tr. 184.) Dr. Fernando diagnosed Plaintiff with hepatitis C by history, substance abuse, a history of endocarditis, cardiac murmur, chronic lower back pain with subjective lumbar radiculopathy, and hypertension. (Tr. 188.) Dr. Fernando noted that although she used her Albuterol inhaler periodically, she had never required hospitalization or emergency room visits for any acute respiratory problems. (Tr. 184.) Plaintiff's complaints to Dr. Fernando included shortness of breath due to exertion and back pain aggravated by prolonged standing, bending, and lifting. (Tr. 184.) Her back pain was most acute upon rising from bed. (Tr. 184.) She also complained of headaches reoccurring on a monthly basis that sometimes lasted for days, for which she was using Advil and Naproxen. (Tr. 185.) The headaches were claimed to be associated with black spots before her eyes, dizziness and nausea. (Tr. 185.) Plaintiff admitted to Dr. Fernando to

5

using intravenous heroin up to April 2004 and that she was currently on a Methadone program, using about 18 mg of Methadone daily. (Tr. 184.) Plaintiff had been smoking up to four packs of cigarettes a day, but at the time was down to five or six cigarettes per day. (Tr. 185.) Plaintiff reported that she lived alone and that she cooked, cleaned, shopped, as well as showered and dressed herself. (Tr. 185.)

A physical examination by Dr. Fernando showed that Plaintiff was able to squat to about half of full, had a normal gait, could walk on heels and toes without difficulty, did not require help changing or getting on or off the examination table and was able to rise from a chair without difficulty. (Tr. 186.) Dr. Fernando noticed a heart murmur and that Plaintiff had some tenderness to deep palpation in the right upper abdomen quadrant, and a small, freely reducible umbilical hernia. (Tr. 186-87.) The physical examination findings were otherwise unremarkable, indicating full extremity motor strength, no neurologic motor or sensory deficits, full grip strength and intact hand and finger dexterity, and normal lungs. (Tr. 186-87.) Dr. Fernando's notes indicated that, "except for a partially performed squat and a poorly performed leg raising test," no objective limitations were evident from the examination. (Tr. 188.)

On January 9, 2006, at the request of the Commissioner, Dr. W. Wells, a State agency review physician, upon review of the Plaintiff, concluded that she could stand and walk six hours per day, and lift twenty-five pounds frequently and fifty pounds occasionally. (Tr. 324.)

From January 17 to February 14, 2006, Plaintiff received physical therapy at Muhlenberg Regional Medical Center. (Tr. 221; see Tr. 221-29.) Upon discharge, Plaintiff reported her pain level was 0 out of 10, although she sometimes had tightness in her legs. (Tr. 221.) In a progress report dated February 2, 2006, the physical therapist indicated that Plaintiff was able to perform all activities of daily living independently. (Tr. 224.)

On March 7, 2006, Plaintiff returned to PHC complaining of mild back discomfort, which had grown worse over the previous month. (Tr. 220.) On examination, Plaintiff had paravertebral point tenderness and leg-raising to forty-five degrees. (Tr. 220.) The visit otherwise showed no significant changes. (Tr. 220.)

On March 13, 2006, Plaintiff was evaluated by Dr. Mark Friedman for purposes of determining medical eligibility to receive SSI benefits. (Tr. 289-91; see Tr. 297, 424-25.) Plaintiff complained of shortness of breath, anxiety, and depression. (Tr. 289.) Dr. Friedman's general physical examination showed nothing unremarkable, including lungs that were clear to auscultation and percussion. (Tr. 289.) An examination of the lumbar spine showed vertebral tenderness, paravertebral spasm, and a reduced range of motion. (Tr. 290.) Plaintiff also had a reduced range of motion of the right knee, but otherwise normal muscle strength, sensation, and reflexes. (Tr. 290.) Dr. Friedman noted that Plaintiff had restricted lower back motion and impairment in lifting and carrying, but that Plaintiff's physical examination did not show significant orthopedic difficulties. (Tr. 290-91.) There was evidence of cardiac vascular disease and hypertension. (Tr. 291.)

On May 4, 2006, at the request of the Commissioner, Plaintiff was examined by psychiatrist Dr. Aryeh Klahr. (Tr. 292-96.) In addition to her physical symptoms, Plaintiff complained of depression, daily anxiety attacks, and memory problems. (Tr. 292.) Dr. Klahr noted that Plaintiff spends most of her time sitting at home; she feels sad, cries and becomes afraid and has gained twenty pounds. (Tr. 292-93.) She denied detox or rehabilitation, as well as psychiatric hospitalizations or suicide attempts. (Tr. 293.) Plaintiff stated she had been "using drugs off and on for the past ten years" and reported that she had previously relapsed on using heroin, but had not used since April 2005. (Tr. 293.) Plaintiff also reported smoking five

to seven cigarettes daily and that she had hepatitis C. (Tr. 293.)

The results of Plaintiff's mental examination were unremarkable, showing normal speech, intact attention and concentration, average intelligence, and fair judgment. (Tr. 294-95.) Dr. Klahr diagnosed chronic severe opioid dependence, chronic severe nicotine dependence, and depressive disorder not otherwise specified (NOS). (Tr. 295.) Dr. Klahr indicated that if Plaintiff maintained abstinence, she could follow and understand simple instructions and perform simple tasks in a structured environment with a sympathetic supervisor. (Tr. 295.) The doctor indicated that Plaintiff "may have difficulty with more complex tasks in a competitive work environment," but that this should improve with treatment. (Tr. 295.)

On July 6, 2006, Plaintiff went to UCPC Behavioral Healthcare for complaints of panic and anxiety attacks, which began the previous year. (Tr. 328.) Plaintiff reported that she was being treated for hypertension, diabetes, asthma, and coronary heart disease. (Tr. 333.) She reported that she was treated for anxiety by her primary care provider, and that her medications included Clonazepam. (Tr. 329, 337.) Plaintiff denied substance abuse. (Tr. 329.) Plaintiff stated that her recreational activities were sleeping and watching television. (Tr. 332.) Plaintiff reported that she had not worked for several years, and that she has "had it with work." (Tr. 331.)

Plaintiff's mental examination indicated defective memory, fair insight, mildly impaired judgment, and suicidal ideation without a plan. (Tr. 335.) The remainder of the examination revealed nothing out of the ordinary. (Tr. 335.) The examining licensed professional counselor diagnosed anxiety disorder, and a single episode of major depressive disorder. (Tr. 336.) It was recommended that Plaintiff receive individual therapy, a psychiatric evaluation, and medications. (Tr. 337.)

On July 31, 2006, at the request of the Commissioner, Dr. Thomas Harding, a State agency psychologist, reviewed the evidence in Plaintiff's case and completed an assessment. (Tr. 306-23.) Dr. Harding indicated that Plaintiff had mild restriction of activities of daily living, moderate difficulties in maintaining social functioning and in maintaining concentration, persistence, or pace. (Tr. 320.) He also indicated that there was insufficient evidence to determine whether Plaintiff had repeated episodes of "deterioration of extended duration."[3] (Tr. 320.) Dr. Harding adopted the opinion of Dr. Klahr, the consultative examiner, that Plaintiff could perform work-related activities with some limitations. (Tr. 308; see Tr. 295.)

On February 13, 2008, also at the request of the Commissioner, internist Dr. Rambhai C. Patel performed a consultative examination on Plaintiff. (Tr. 344-46.) Plaintiff's complaints included headaches and dizziness two to three times per month, daily chest pain, which lasted up to twenty minutes at a time, and daily asthmatic attacks, the last of which had occurred four months prior. (Tr. 344.) She also reported daily anxiety attacks, somewhat helped by Clonazepam, and shortness of breath, for which she used a Proventil inhaler. (Tr. 344.) Additionally, Plaintiff complained of pain and numbness in the right elbow and the right hand, which Plaintiff claimed was exacerbated by lifting more than five pounds. (Tr. 345.)

On physical examination, Plaintiff demonstrated some range of motion restrictions in the shoulders, hips and knees, but the rest of the results were unremarkable. (Tr. 345.) The test showed Plaintiff had a normal gait, normal breathing, no edema in the lower extremities, no gross neurological deficits, and normal grip in both hands. (Tr. 345.) Dr. Patel diagnosed hypertension, atypical chest pain, anxiety and depression syndrome, chronic asthma by history, and possible arthritis in the right elbow and right hand. (Tr. 346.) Dr. Patel's evaluation

---

[3] The Commissioner's regulations evaluate mental impairments with respect to four broad areas: 1) activities of daily living; 2) social functioning; 3) concentration, persistence, or pace; and 4) episodes of deterioration. 20 C.F.R. §416.920a.

indicated that Plaintiff could occasionally lift and carry up to ten pounds, and was able to sit, stand, or walk eight hours in an eight-hour workday, but was limited to occasional use of the right hand for reaching, handling, fingering, feeling and pushing or pulling. (Tr. 347-49.) Dr. Patel further indicated that Plaintiff could occasionally climb stairs, ramps, ladders, or scaffolds, and occasionally balance, stoop, kneel, crouch, and crawl. (Tr. 350.) Additionally, Plaintiff could frequently use both feet to operate foot controls, could occasionally operate a motor vehicle and be exposed to unprotected heights, moving mechanical parts, humidity, pulmonary irritants, extreme cold or heat, and vibrations. (Tr. 349, 351.) She was limited to moderate or office-like exposure to noise. (Tr. 351.)

### 2. Medical Evidence Subsequent to January 1, 2010, the Date the ALJ Found Plaintiff Disabled

On June 22, 2010, Dr. Patel performed another consultative examination. Plaintiff claimed disability due to lower back pain, for which she is taking an unknown medication; asthma, for which she uses a Ventolin inhaler; diabetes mellitus, for which she is taking metformin twice a day; hypertension, which causes dizziness and headaches; and sharp chest pain precipitated by walking less than one block, lasting from five to ten minutes. (Tr. 356-57.) Plaintiff has a history of hepatitis C and a history of heroin use. (Tr. 357.) On physical examination, Plaintiff had a "questionable slightly diminished" sensation of lower extremities. (Tr. 358.) Dr. Patel's functional assessment limited Plaintiff to sitting for one hour and standing or walking for thirty minutes in an eight-hour day. (Tr. 368.)

On July 22, 2010, psychologist Dr. Ernesto L. Perdomo, at the request of the Commissioner, performed a psychological evaluation. (Tr. 372-79.) Plaintiff complained of panic attacks, feelings of sadness, lack of interest, lack of motivation, tiredness, and lack of energy. (Tr. 373.) The results of the intellectual assessment were normal. (Tr. 373.) The test

showed scores in the upper level of the borderline range of intellectual functioning, but Dr. Perdomo noted that Plaintiff's "true ability may be a little more toward the low average range." (Tr. 373-74.) Dr. Perdomo's assessment indicated that Plaintiff had no limitations in ability to understand, carry out, or make judgments on simple instructions and decisions, with mild limitations for complex instructions and decisions. (Tr. 377.) Plaintiff had moderate limitations for interacting appropriately with the public, supervisors, and co-workers, but no significant mental deficiency. (Tr. 378.) However, Dr. Perdomo noted that Plaintiff's history of panic attacks, depression, and various medical problems may interfere with her ability to function in a job. (Tr. 378.)

## III.    DISCUSSION

### A.  Standard of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g). It is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder" but must give deference to the administrative findings. Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992); see also 42 U.S.C. §405(g). Nevertheless, the Court must "scrutinize the record as a whole to determine whether the conclusions reached are rational" and supported by substantial evidence. Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) (citations omitted). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L.Ed.2d 842 (1971) (citation omitted). If the factual record is adequately developed, substantial evidence "may be 'something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by

substantial evidence.'" <u>Daniels v. Astrue</u>, No. 4:08-1676, 2009 U.S. Dist. LEXIS 32110, at *7 (M.D. Pa. Apr. 15, 2009) (quoting <u>Consolo v. Fed. Mar. Comm'n</u>, 383 U.S. 607, 620 (1966)).

This Court may not set aside the ALJ's decision merely because it would have come to a different conclusion. <u>Cruz v. Comm'r of Soc. Sec.</u>, 244 Fed. Appx. 475, 479 (3d Cir. 2007) (citing <u>Hartranft v. Apfel</u>, 181 F.3d 358, 360 (3d Cir. 1999)). However, "where there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." <u>Cruz</u>, 244 Fed. Appx. at 479 (citing <u>Hargenrader v. Califano</u>, 575 F.2d 434, 437 (3d Cir. 1978)). Where the ALJ has rejected competent medical evidence, the ALJ must adequately explain his reasons and provide the rationale behind his decision. <u>See</u> <u>Brewster v. Heckler</u>, 786 F.2d 581, 585 (3d Cir. 1986). Given the totality of the evidence, including objective medical facts, diagnoses and medical opinions, and subjective evidence of pain, the reviewing court must determine whether the ALJ's decision is adequately supported. <u>See</u> <u>Curtain v. Harris</u>, 508 F. Supp. 791, 793 (D.N.J. 1981). Generally, medical opinions consistent with other evidence are given more weight whereas opinions inconsistent with the evidence or with themselves are subject to additional scrutiny against the entire record. 20 C.F.R. §416.927. Overall, the substantial evidence standard is a deferential standard of review, which requires deference to inferences drawn by the ALJ from the facts, if they are supported by substantial evidence. <u>Schaudeck v. Comm'r of Soc. Sec. Admin.</u>, 181 F.3d 429, 431 (3d Cir. 1999).

### B. Determining Disability

Pursuant to the Social Security Act, to receive SSIB, a claimant must show that he is disabled by demonstrating that he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Taking into account the claimant's age, education, and work experience, disability will be evaluated by the claimant's ability to engage in his previous work or any other form of substantial gainful activity existing in the national economy. 42 U.S.C. §1382c(a)(3)(B). Thus, the claimant's physical or mental impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." Id. Impairments that affect the claimant's "ability to meet the strength demands of jobs" with respect to "sitting, standing, walking, lifting, carrying, pushing, and pulling" are considered exertional limitations. 20 C.F.R. § 416.969a(a)-(b); Sykes v. Apfel, 228 F.3d 259, 263 (3d Cir. 2000). All other impairments are considered nonexertional. 20 C.F.R. § 416.969a(a), (c); Sykes, 228 F.3d at 263. Decisions regarding disability will be made individually and will be based on evidence adduced at a hearing. Sykes, 228 F.3d at 262 (citing Heckler v. Campbell, 461 U.S. 458, 467, 103 S. Ct. 1952, 76, L.Ed.2d 66 (1983)). Congress has established the type of evidence necessary to prove the existence of a disabling impairment by defining a physical or mental impairment as "an impairment that results from anatomical, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(C).

The SSA follows a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. The evaluation will continue through each step unless it can be determined at any point that the claimant is or is not disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one, two, and

four, upon which the burden shifts to the Commissioner at step five. <u>Sykes</u>, 228 F.3d at 263. Neither party bears the burden at step three. <u>Id.</u> at 263, n.2.

At step one, the claimant's work activity is assessed, and the claimant must demonstrate that he is not engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). An individual is engaging in substantial gainful activity if he is doing significant physical or mental activities for pay or profit. 20 C.F.R. §§ 404.1572, 416.972. If the claimant is engaged in substantial gainful activity, he will be found not disabled and the analysis will stop, regardless of claimant's medical condition, age, education, or work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaging in substantial gainful activity, the analysis proceeds to the second step.

At step two, the claimant must show he has a medically determinable "severe" impairment or a combination of impairments that is "severe." 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is severe when it significantly limits an individual's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). It is not severe when medical evidence shows only a slight abnormality or minimal effect on an individual's ability to work. <u>See</u> <u>Leonardo v. Comm'r of Soc. Sec.</u>, No. 10-1498, 2010 WL 4747173, at *4 (D.N.J. 2010). If the claimant does not have a medically determinable severe impairment, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii) & (c), 416.920(a)(4)(ii) & (c). If the claimant has a severe impairment, the analysis proceeds to the third step.

At step three, the ALJ must determine, based on the medical evidence, whether the claimant's impairment matches or is equivalent to a listed impairment found in the Social Security Regulations' "Listing of Impairments" found in 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairments are the same or

equivalent to those listed, the claimant is per se disabled. 20 C.F.R. §§ 404.1520(d), 416.920(d); Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 119 (3d Cir. 2000). At this point, the ALJ must set forth the reasons for his findings. Burnett, 220 F.3d at 119. The Third Circuit requires the ALJ to identify the relevant listings and explain his reasoning using the evidence. Id. Simple conclusory remarks will not suffice and will leave the ALJ's decision "beyond meaningful judicial review." Id.

When the claimant does not suffer from a listed impairment or an equivalent, the analysis proceeds to step four. At step four, the ALJ must determine whether the claimant's residual functioning capacity ("RFC") enables him to perform his past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(ix), 416.920(a)(4)(iv). This step involves three sub-steps: (1) the ALJ must make specific findings of fact as to the claimant's RFC; (2) the ALJ must make findings as to the physical and mental demands of the claimant's past relevant work; and (3) the ALJ must compare the RFC to the past relevant work to determine whether the claimant has the capability to perform the past relevant work. Burnett, 220 F.3d at 120. The SSA often classifies RFC and past work by physical exertion requirements from "sedentary" to "very heavy work." See id.; 20 C.F.Tr. §§ 404.1567, 404.967. If the claimant can perform his past work, the ALJ will find that he is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant lacks the RFC to perform any work he has done in the past, the analysis proceeds to the fifth and final step.

At step five, the Commissioner must show that, based on the claimant's RFC and other vocational factors, there is a significant amount of other work in the national economy that the claimant can perform. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). During this final step, the burden lies with the government. See Rutherford v. Barnhart, 399 F.3d 546, 551 (3d Cir. 2005); Sykes, 228 F.3d at 263. If the Commissioner cannot show there are a significant number

of other jobs for the claimant in the national economy, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(ix), 416.920(a)(4)(iv).

## IV. DISCUSSION

### A. Summary of the ALJ's Findings

After reviewing all of the evidence in the record, the ALJ determined that Plaintiff was disabled as of January 1, 2010. (Tr. 25-26.) The ALJ arrived at his decision by following the required five-step sequential analysis.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 1, 2005, the alleged onset date of her disability. (Tr. 16.) At step two, the ALJ concluded that Plaintiff had the following severe impairments: degenerative disc disease, depression, anxiety, borderline intellectual functioning, asthma, diabetes, hypertension, and a history of substance abuse. (Id.) Although Plaintiff had been diagnosed with Hepatitis C and claimed to have frequent headaches, the ALJ found that the evidence did not support a finding that either of these ailments resulted in limitations on Plaintiff's ability to do basic work activities. (Id. at 16.) Therefore, the ALJ found that they are not severe impairments. (Id. at 16.)

The ALJ then proceeded to step three, where he compared the Plaintiff's impairments to the listing in section 1.04 for Musculoskeletal Impairments. The ALJ found that Plaintiff did not have an impairment, or a combination of impairments, that meet or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 C.F.R. § 416.920(d), § 416.925 and § 416.926). (Tr. 16.)

Considering the evidence in the record, the ALJ found that prior to January 1, 2010, Plaintiff had the residual functioning capacity ("RFC") to perform light work, as defined in 20

C.F.R. § 416.967(b), with the exception that "she had to avoid concentrated exposure to dust, smoke, fumes and other respiratory irritants, as well as temperature extremes due to asthma." (Tr. 19) At step four, considering the testimony of a vocational expert, the ALJ concluded that prior to January 1, 2010, Plaintiff's RFC would not preclude her from performing past relevant work as a cashier. (Tr. 25.) The ALJ therefore determined that prior to January 1, 2010, Plaintiff was not disabled within the meaning of the Act. (Tr. 25-26.) However, the ALJ concluded that beginning on January 1, 2010, Plaintiff's RFC for less than sedentary work precluded her from performing her past relevant work or other work existing in significant numbers in the national economy. (Tr. 25-26.)

### B. Analysis

The ALJ's decision provides that Plaintiff was not disabled prior to January 1, 2010. Plaintiff's challenge to the ALJ's decision is incorrect for several reasons. Plaintiff first argues that the ALJ's decision fails to acknowledge that her hepatitis C and headaches are severe impairments. (Pl.'s Br. 11.) Next, Plaintiff asserts that the ALJ failed to consider her impairments in combination to determine whether she medically equaled a listed impairment. (Pl.'s Br. 11.) Plaintiff also argues that the ALJ was erroneous in his RFC assessment as well as in his finding that Plaintiff could perform past relevant work. (Pl.'s Br. 11.) Defendant opposes all of Plaintiff's arguments and additionally asserts that Plaintiff's brief fails to conform to Local Civil Rule 9.1. The Court will first address Defendant's argument regarding Plaintiff's brief.

> *1. The Scope of the Court's Review is Limited to the Parties' Briefs and the ALJ's Final Decision.*

The Commissioner argues that Plaintiff's brief fails to adhere to Local Civil Rule 9.1. (Def.'s Br. 17.) Specifically, the Commissioner contends that Plaintiff's brief does not have any discernible structure, does not clearly identify each of her arguments, and erroneously requests

that the Court review the ALJ's previous decision dated October 31, 2008 in addition to the final decision dated November 16, 2010, which is the subject of judicial review in this case. (Def.'s Br. 18.) Further, the Commissioner argues that Plaintiff improperly attempts to incorporate by reference the arguments she put forth to the Appeals Council as well as those arguments contained in her statement of contentions, filed pursuant to Local Civil Rule 9.1(d). (Def.'s Br. 18; see Pl.'s Br. 8-17.)

Under Local Civil Rule 9.1, "Plaintiff's brief shall contain . . . a statement of facts with reference to the administrative record" and "an argument . . . divided into sections separately treating each issue and must set forth Plaintiff's arguments with respect to the issues presented and the reasons therefore . . . ." L. Civ. R. 9.1(e)(5). Furthermore, the Court's review is limited to determining whether the ALJ's final decision is supported by substantial evidence. Hatton v. Comm'r of Soc. Sec., 131 F. App'x 877, 878 (3d Cir. 2005) (citing 42 U.S.C. § 405(g)). Here, Plaintiff improperly requests that the Court review arguments that are not stated within her brief. (See Pl.'s Br. 9-10, 13, 16.) While the Court has reviewed the entire record in coming to its decision, the Court will herein focus its review on the arguments presented in the parties' briefs and will determine only whether the ALJ's final decision is supported by substantial evidence.

2. *The ALJ Properly Determined That Plaintiff's Headaches and Hepatitis C Were Not Severe Impairments.*

The ALJ determined that Plaintiff's degenerative disc disease, depression, anxiety, borderline intellectual functioning, asthma, diabetes, hypertension, and history of substance abuse were severe impairments. (Tr. 16.) Plaintiff alleges that the ALJ failed to designate her hepatitis C and headaches as severe impairments at step two. (Pl.'s Br. 11.) As discussed, the claimant bears the burden of proof at step two. Sykes, 228 F.3d at 263. Step two is considered a "threshold step" in which the ALJ determines whether the claimant has a medically severe

impairment or combination of impairments. Bowen v. Yuckert, 482 U.S. 137, 140-41, 107 S. Ct. 2287, 96 L. Ed. 119 (1987); Social Security Ruling (SSR) 86-8, 1986 SSR LEXIS 15, at *6-7. An impairment is severe when it significantly limits an individual's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). It is not severe when medical evidence shows only a slight abnormality or minimal effect on an individual's ability to work. See Leonardo v. Comm'r of Soc. Sec., No. 10-1498, 2010 WL 4747173, at *4 (D.N.J. 2010).

Other than stating that she was diagnosed with hepatitis C and that she suffers from headaches, Plaintiff provided no evidence or explanation as to how these conditions had more than a minimal effect on her ability to work. (See Pl.'s Br. 11.) Plaintiff claims that her hepatitis C is "a potentially fatal virus that has damaged her liver as shown by liver function studies," but does not cite to any medical evidence in the record to support a finding that it is a severe impairment. (Pl.'s Br. 11.) In fact, the only evidence related to Plaintiff's hepatitis C, as noted by the ALJ, was a record from August 2, 2005, that stated that Plaintiff's liver function tests were normal. (Tr. 16, 155, 271-73.) Furthermore, in 2006, Plaintiff herself reported that she believed her "enzymes [were] normal." (Tr. 293.)

One laboratory test does in fact indicate that Plaintiff has elevated liver enzymes. However, this test was submitted only to the Appeals Council, after the ALJ rendered his decision, and cannot be used to argue that the ALJ's decision was not supported by substantial evidence. (Tr. 380, 382.) See Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 360 (3d Cir. 2011) ("[R]emand based on new evidence is only appropriate where the claimant shows good cause why that evidence was not procured or presented before the ALJ's decision."). Even if the Court considered the laboratory test submitted by Plaintiff, it is not enough to conclude that the

ALJ's decision was not supported by substantial evidence. Plaintiff testified that she does not take any medication for hepatitis C, nor does she receive any treatment for the condition itself or for any apparent related conditions. (Tr. 16.) Accordingly, the ALJ had no evidentiary basis to conclude that this alleged impairment was severe.

Similarly, the ALJ properly rejected Plaintiff's headaches as a severe impairment from his analysis at step two. While Plaintiff complained of headaches in a few of her consultative examinations (Tr. 184-85, 344), the record does not indicate that there was any treatment for this condition or that it limited her work activities. As such, Plaintiff did not provide sufficient evidence that her headaches had more than a minimal effect on her ability to work and the ALJ was therefore correct in rejecting it as a severe impairment. The Court affirms the ALJ's finding at step two.

### 3. The ALJ Properly Considered the Combined Effects of Plaintiff's Impairments.

At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 16-18.) Plaintiff asserts that the ALJ failed to consider her impairments in combination to determine whether she medically equaled a listed impairment. (Pl.'s Br. 11.)

The ALJ concluded that Plaintiff "has not had an impairment or combination of impairments that meets or medically equals one of the listed impairments." (Tr. 16.) In his analysis, the ALJ compared Plaintiff's impairments to the listings for Musculoskeletal Impairments (1.04); Asthma (3.03B, 3.02A); Diabetes (9.08); Hypertension (4.03); and Mental Disorders (12.04, 12.06, 12.09) and determined that they did not meet the required criteria for any of those listings. (Tr. 16-18.) The ALJ conducted a thorough analysis of each listing, detailing how the Plaintiff's medical records related to each of her impairments. (Id.) Despite

Plaintiff's contention that the ALJ "never even claims to consider all of those impairments in concert," the ALJ does in fact state that the combination of Plaintiff's impairments does not meet or medically equal any of the listed impairments. (Tr. 16, 17.) "Indeed, where the ALJ has indicated that impairments have been considered in combination, there is no reason not to believe that the ALJ did so." Gainey v. Astrue, No. 10-1912, 2011 WL 1560865, at *12 (D.N.J. Apr. 25, 2011) (quoting Morrison v. Comm'r of Soc. Sec., 268 F. App'x 186, 189 (3d Cir. 2008)). Moreover, Plaintiff has not pointed to any evidence in the record which suggests that her impairments rise to the level of severity equivalent to that of a listed impairment. Therefore, the Court finds that the ALJ properly considered the combined effects of Plaintiff's impairments when determining if they medically equal a listed impairment. The ALJ's findings at step three are affirmed.

### 4. The ALJ's RFC Assessment is Supported by Substantial Evidence.

Prior to considering step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). See 20 C.F.R. § 416.920(e); Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987). Plaintiff has the burden of presenting evidence that she did not have the RFC to perform any substantial gainful activity. See 42 U.S.C. §§ 423(d)(5)(A), 1382c(a)(3)(H)(i); 20 C.F.R. § 416.912(c). Here, the ALJ found that prior to January 1, 2010, the Plaintiff had the RFC to perform light work except that she had to avoid concentrated exposure to dust, smoke, fumes, and other respiratory irritants, as well as temperature extremes due to asthma. (Tr. 19.) Further, the ALJ determined that due to her mental impairments, she was limited to simple, unskilled, routine jobs. (Tr. 19.)

Plaintiff asserts that the ALJ erred in his assessment of Plaintiff's RFC. (Pl.'s Br. 8-17.) In particular, Plaintiff makes the following arguments: (1) that the ALJ failed to consider her

pulmonary restrictions and the issues with her right hand; (2) that the ALJ failed to consider that her back and leg pain limit her ability to stand for long hours; (3) that the ALJ erred in finding that Plaintiff can perform simple routine/repetitive tasks; (4) that Plaintiff's mental impairment existed earlier than the ALJ concluded; and (5) that the ALJ failed to describe her RFC "in terms of specific work limitations and/or capabilities on a 'function by function basis.'" (Pl.'s Br. 16.)

The Court finds that the ALJ adequately considered Plaintiff's asthma and pulmonary restrictions in his assessment of Plaintiff's RFC. In his analysis, the ALJ specifically noted that Plaintiff was prescribed various asthma medications, (Tr. 20), but that there were no emergency room visits for her condition and her lungs were clear and without wheezing, rales, or rhonchi, (Id.). The ALJ also observed that Plaintiff continued to smoke cigarettes despite being instructed to cut down by Dr. Walsh. (Id.) Further, the record shows that at a consultative exam in 2004, Dr. Sha found that Plaintiff's lungs were clear, and again counseled Plaintiff to quit smoking, but she said she was "not ready to quit yet." (Id.) On December 28, 2005, Dr. Fernando found that Plaintiff's pulmonary function studies were normal and that her chest x-ray showed no active lung disease.

In August 2004, Plaintiff's treating cardiologist Dr. Husain found that she had shortness of breath upon exertion. (Tr. 20-21.) Plaintiff underwent a stress test at that time, the results of which were normal. (Id.) Dr. Husain reported that Plaintiff experienced chest pain upon minimal exertion, but that she continued to smoke cigarettes. (Id.) In February 2005, Plaintiff had a cardiac catheterization that revealed normal coronary arteries, atrial fistula, and preserved left ventricular systolic function. (Id.) Dr. Husain found that Plaintiff had no limitations in her ability to work. (Id. at 21.) In January 2006, Plaintiff underwent a stress test which showed no chest pains or EKG changes that would suggest myocardial ischemia. (Tr. 21.) Considering the

medical record, the ALJ properly concluded that due to Plaintiff's asthma, she had to avoid concentrated exposure to dust, smoke, fumes and other respiratory irritants, as well as temperature extremes. Therefore, the Court affirms the ALJ's decision on this point.

The Court also finds that the ALJ gave sufficient consideration to Plaintiff's complaint that she had pain in her right elbow and right hand. (Tr. 22-23.) The ALJ noted that Dr. Patel examined Plaintiff on February 13, 2008, and despite Plaintiff's complaints, found that there was no evidence of swelling in her hands or interphalangeal joints. (Id.) Her grip strength was normal. (Id.) The range of motion in both her left and right shoulders was approximately the same. (Id.) During Dr. Patel's examination, Plaintiff did not complain of back pain and prior to that time, it appears from the record that she did not complain of pain in her right arm. (Tr. 23.)

Similarly, with regard to Plaintiff's back and leg pain, the ALJ noted that in 2005, Plaintiff had an MRI of her lumbar spine that showed L4-L5 disc bulges and she was referred for physical therapy and prescribed Naproxen for pain. (Tr. 21-22.) A physical examination by Dr. Fernando indicated that she had full motor strength of both the upper and lower extremities, had a normal gait and station, and did not need an assistive device. (Tr. 22.) Plaintiff has never been hospitalized for these complaints and she testified that she only uses Advil for her back pain and headaches. (Tr. 22.) The ALJ adequately considered Plaintiff's complaints regarding the issues she has with her right arm as well as her back and leg pain. Therefore, the ALJ's decision not to include limitations associated with these ailments is supported by substantial evidence.

Plaintiff also argues that the ALJ erred in finding that Plaintiff can perform simple routine and repetitive tasks. (Pl.'s Br. 13.) Plaintiff claims that the "[T]hird Circuit has long ago eliminated this utilitarian formula by which everyone can work," but does not offer any case law to support this proposition. (Pl.'s Br. 13.) The subject regulations identify "understanding,

carrying out, and remembering simple instructions" as an example of basic work activity. 20 C.F.R. § 416.921. Moreover, "[c]ourts have consistently held that the limitation, 'simple tasks,' is the equivalent of the ability to perform 'simple duties' within the definition of unskilled work.'" Dahlhaus v. Astrue, No. 11-4811, 2012 WL 3283532, at *13 (D.N.J. Aug. 10, 2012).

The medical and other opinions in the record support a finding that Plaintiff could perform light work in simple, unskilled, routine jobs without concentrated exposure to respiratory irritants and temperature extremes. (Tr. 19, 23.) Dr. Klahr and Dr. Perdomo both found that Plaintiff could understand and carry out simple tasks or instructions. (Tr. 295, 377.) Only Dr. Patel opined that Plaintiff had slightly greater restrictions than the requirements of light work. (Tr. 347-52.) The ALJ considered Dr. Patel's opinion, but relied on the other, more consistent opinions in the record. (Tr. 19, 23.) See Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 505-06 (3d. Cir. 2009) ("In evaluating medical reports, the ALJ is free to choose the medical opinion of one doctor over that of another.") Therefore, the ALJ's finding that Plaintiff could perform "simple tasks" prior to January 1, 2010, is supported by substantial evidence.

Plaintiff further claims that her mental impairment existed earlier than the ALJ concluded (Pl.'s Br. 17) and that she was found to suffer "moderate limitations" in concentration, persistence and pace and therefore, cannot ring items at a checkout line (Pl.'s Br. 13-14.). The ALJ adequately considered Plaintiff's mental impairments, noting that according to an examination in 2006, she complained of depression, anxiety, and memory problems, but that she does not see a psychiatrist and has never been hospitalized for these problems. (Tr. 21.) Further, the examiner found that while Plaintiff was depressed and had possible panic disorder and agoraphobia, her attention and concentration were in tact, as was her memory, and her speech was clear. (Tr. 21.) He remarked that her difficulties with complex tasks should improve with

continued treatment. (Tr. 21.) Moreover, as noted by the ALJ, Dr. Harding made an additional, separate RFC analysis in which he found that Plaintiff was in fact able to follow, understand, and carry out simple instructions and perform simple tasks. (Tr. 22.) Therefore, the ALJ's findings regarding Plaintiff's mental impairments were supported by substantial evidence and are accordingly affirmed.[4]

Finally, Plaintiff asserts that the RFC "must be described in terms of specific work limitations and/or capabilities on a 'function by function basis.'" (Pl.'s Br. 16.) Plaintiff argues that the ALJ did not conduct a "task by task" analysis or a pain evaluation. (Pl.'s Br. 16.) The Court finds that this argument has no merit. The ALJ supported his findings, considered each of Plaintiff's impairments and complaints, and provided a thorough and detailed analysis of the record. (See Tr. 19-24.) The ALJ considered each of Plaintiff's impairments in the context of her prior employment and sufficiently explained his findings. (Id.) Further, the Court notes that the ALJ is only required to sufficiently develop the record in order to provide a meaningful review and is not required "to use particular language or adhere to a particular format in conducting his analysis." Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004). Here, as discussed, the ALJ developed the record and supported his findings regarding Plaintiff's RFC. As such, the Court finds that the ALJ's RFC determination is supported by substantial evidence and is therefore affirmed.

> 5. *The ALJ Correctly Determined That Plaintiff Was Able to Perform Past Relevant Work.*

---

[4] The Plaintiff is accurate in asserting that the State agency consultative psychologist Dr. Harding assessed that Plaintiff had mild restriction of activities of daily living and moderate difficulties in maintaining social functioning and in maintaining concentration, persistence or pace. (Tr. 320.) However, these specific findings were in relation to Dr. Harding's assessment of claimant's disorders with respect to the listed impairments in sections 12.04 and 12.09, pursuant to step three of the sequential analysis, not part of his RFC assessment. (Tr. 306-08.)

Plaintiff argues that the ALJ incorrectly concluded that she was able to perform past relevant work. Plaintiff claims that she is incapable of performing her past job as a "cashier for the Home Depot." (Pl.'s Br. 11.) In particular, Plaintiff contends that based on the ALJ's finding that the Plaintiff could return to a cashier position, not specifically to a cashier position at the Home Depot, the ALJ should have moved on to step five of the analysis. (Pl.'s Br. 11, 12.) Plaintiff claims that she could not stand for an eight hour shift and that the impairment she suffers in her right arm would preclude her from being a cashier. (Pl.'s Br. 11-12.)

At step four, Plaintiff is required to show that she is unable to perform her past relevant work both as she has performed it in her specific job and as it is generally performed in the national economy. See 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. §§ 416.920(f), 416.960(b); SSR 82-61, 1982 WL 31387. "Under sections 404.1520(e) and 416.920(e) of the regulations, a claimant will be found to be 'not disabled' when it is determined that he or she retains the RFC to perform: (1) [t]he actual functional demands and job duties of a particular past relevant job; or (2) [t]he functional demands and job duties of the occupation as generally required by employees throughout the national economy." SSR 82-61, 1982 WL 31387, at *2. "[I]f the claimant cannot perform the excessive function demands and/or job duties actually required in the former job but can perform the functional demands and job duties as generally required by employers throughout the economy, the claimant should be found to be 'not disabled.'" SSR 82-61, 1982 WL 3137, at *2.

At the June 4, 2010 hearing before the ALJ, a vocational expert testified that based on a hypothetical that incorporated all the limitations considered in the ALJ's RFC assessment, the Plaintiff could perform work as a cashier. Tr. 457-58. Because the hypothetical incorporated all of the limitations in Plaintiff's RFC, which as previously discussed is supported by substantial

evidence, the ALJ properly relied on the vocational expert's testimony that Plaintiff could perform her past relevant work as a cashier as it is generally performed in the national economy. See Diaz v. Comm'r of Soc. Sec., 440 F. App'x 70, 72-73 (3d Cir. 2011). Therefore, the Plaintiff failed to meet her burden of showing that she could not perform the job duties for a cashier, as they are required throughout the national economy.

While the ALJ inquired of the vocational expert regarding additional limitations including infrequent use of Plaintiff's right arm and hand, and the potential sit/stand options for cashiers, these limitations were ultimately not incorporated into the ALJ's RFC assessment. (See Tr. 459.) Because the ALJ's final RFC determination is supported by substantial evidence and the ALJ relied on the vocational expert's testimony regarding Plaintiff's ability to perform work as a cashier as it is generally performed in the national economy, the ALJ's decision is affirmed.

## V.    CONCLUSION

For the foregoing reasons, the ALJ's decision that Plaintiff was not disabled within the meaning of the Social Security Act prior to January 1, 2010, is hereby affirmed. An appropriate Order accompanies this Opinion.

Dated: June 27, 2013

HON. CLAIRE C. CECCHI
United States District Judge